**JASSY VICK CAROLAN** LLP
JEAN-PAUL JASSY, Cal. Bar No. 205513
  jpjassy@jassyvick.com
JEFFREY A. PAYNE, Cal. Bar No. 279034
  jpayne@jassyvick.com
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:  310-870-7048
Facsimile:  310-870-7010

**LOS ANGELES TIMES COMMUNICATIONS** LLC
JEFF GLASSER, Cal. Bar No. 252596
  jeff.glasser@latimes.com
2300 E. Imperial Highway
El Segundo, California 90245
Telephone:  213-237-5000

Attorneys for Proposed Intervenor
Los Angeles Times Communications LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFIK KYURKJIAN, *et al.*, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    vs.<br><br>AXA S.A., *et al.*,<br><br>             Defendants. | Case No. 2:02-cv-01750-CAS-Mc<br>Hon. Christina A. Snyder<br><br>**PROPOSED INTERVENOR LOS ANGELES TIMES COMMUNICATIONS LLC'S NOTICE OF MOTION AND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF JEAN-PAUL JASSY WITH EXHIBIT A**<br><br>Hearing Date:    October 25, 2021<br>Time:          10:00 a.m.<br>Courtroom:     8D |

1    TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL

2    OF RECORD:

3    PLEASE TAKE NOTICE that on October 25, 2021, at 10:00 a.m., or as soon

4    thereafter as counsel may be heard in the above-entitled Court, the Hon. Christina A.

5    Snyder, presiding, located at the First Street Courthouse, 350 W. First Street,

6    Courtroom 8D, 8th Floor, Los Angeles, CA 90012,[1] proposed intervenor Los Angeles

7    Times Communications LLC ("The Times") will and hereby does move to intervene

8    for the limited purpose of applying and moving the Court to unseal, in whole or at

9    least in part, all sealed documents in the above-captioned case, including without

10   limitation, Docket Nos. 190 with exhibits, 283 (sealing transcript of July 18, 2013

11   call), 306, 307, 308, 309, 310, 317, 319, 325, 326, 327, 328, 329, 330, 331, 332, 333,

12   334, 335, 345, 346, 347, 348, 349, 350, 351, 352, 358, 359, 360, 361, 363, 364, 373,

13   374, 375, 377, 379, 381, 382, 383, and 384, or to direct the limited redaction and

14   unsealing of such records.

15   This Motion is made pursuant to the First and Fourteenth Amendments to the

16   United States Constitution, Article 1, section 3 of the California Constitution, the

17   common law, the Court's inherent authority, and Local Civil Rule 79-7.2 of the

18   United States District Court for the Central District of California.  The Motion is

19   based on this Notice, the attached Memorandum of Points and Authorities, the

20   Declaration of Jean-Paul Jassy with Exhibit A, all records in this action, and any

21   other and further argument and evidence as may be accepted by this Court.

22   **This motion is made following the conference of counsel pursuant to Local**

23   **Civil Rule 7-3 which took place on September 14 and 20, 2021.**  *See* Declaration

24   of Jean-Paul Jassy with Ex. A (reflecting more details about conference of counsel

25   process).

26   

27   [1] Per the Court's direction, this matter may be heard via videoconference, the details
     for which can be found at: https://www.cacd.uscourts.gov/honorable-christina-
     snyder-0.

28

1

Dated:  September 27, 2021                    JASSY VICK CAROLAN LLP

2

3                                             By:  ___/s/ Jean-Paul Jassy

4                                             Jean-Paul Jassy
                                              Attorneys for Proposed Intervenor
5                                             Los Angeles Times Communications
                                              LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.     SUMMARY OF PERTINENT FACTS AND ARGUMENT ..........................1

II.    ARGUMENT ....................................................................................................4

    A.     The Times Has Standing To Intervene To Vindicate Its And The
        Public's Right Of Access To Judicial Records.........................................4

    B.     The Court Records at Issue Are Presumptively Open, and Should Be
        Unsealed....................................................................................................5

        1.     The Right of Access to Judicial Records Arises Under Both
              the First Amendment and Common Law .......................................5

        2.     The Burden to Justify Sealing Court Records is a Heavy One .....7

        3.     The Presumption of Openness Applies to the Court Records
              at Issue Here, And They Should Be Unsealed .............................8

              a.     Records Pertaining to Court-Approved Settlements Are
                    Presumptively Open ............................................................8

              b.     Court Records Pertaining to Counsel's Fees Motions
                    Are Presumptively Open, And Should Be Unsealed .......12

              c.     Court Records Pertaining to this Court's Potential State
                    Bar Referrals Should Also Be Disclosed .........................13

    C.     The Court's Prior Sealing Orders Are Not Narrowly Tailored .............14

1

## **TABLE OF AUTHORITIES**

2
3

Page(s)

CASES

4
5

*In re Associated Press,*
    162 F.3d 503 (7th Cir.1998) ("*Associated Press II*").........................................4

6

*Associated Press v. U.S. Dist, Ct.,*
    705 F.2d 1143 (9th Cir. 1983).............................................................................7

7
8

*Baltimore Sun Co. v. Goetz,*
    886 F.2d 60 (4th Cir. 1989)................................................................................7

9

*Bank of America Nat'l Trust and Savings Assoc. v. Hotel Rittenhouse Associates,*
    800 F.2d 339 (3d Cir. 1986)..........................................................................9, 10

10
11

*Beckman Indus., Inc. v. International Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992)..............................................................................4

12
13

*Brown v. Advantage Engineering, Inc.,*
    960 F.2d 1013 (11th Cir. 1992).........................................................................11

14

*California ex rel. Lockyer v. Safeway, Inc.,*
    355 F. Supp. 2d 1111 (C.D. Cal. 2005)........................................................5, 13

15
16

*Center for Auto Safety v. Chrysler Group, LLC,*
    809 F.3d 1092 (9th Cir. 2016).........................................................................6, 8

17

*Chronicle Publ'g Co. v. Superior Court,*
    54 Cal. 2d 548 (1960)......................................................................................14

18
19

*Courthouse News Serv. v. Planet,*
    750 F.3d 776 (9th Cir. 2014) ("*Planet I*")................................................. 3, 4, 6

20
21

*Courthouse News Service v. Planet,*
    947 F.3d 581 (9th Cir. 2020) ("*Planet II*") ........................................................3

22

*Delalat v. Nutiva, Inc.,*
    No. 16-cv-00711, 2018 WL 1087959 (N.D. Cal. Feb. 26, 2018) ...................12

23
24

*Digital Reg of Tx., LLC v. Adobe Sys., Inc.,*
    No. C 12-1971, 2015 WL 604055 (N.D. Cal. Feb. 11, 2015)..........................12

25

*EEOC v. Erection Co., Inc.,*
    900 F.2d 168 (9th Cir. 1990)...........................................................................8, 9

26
27

*EEOC v. Nat'l Children's Ctr., Inc.,*
    146 F.3d 1043 (D.C. Cir. 1998) .........................................................................4

28

1

*Ferrington v. McAfee, Inc.*,
   No. 10-CV-01455, 2013 WL 3814474 (N.D. Cal. July 22, 2013).................12

2

3

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003)......................................... 2, 3, 6, 7, 8

4

*Gannett Co. v. DePasquale*,
   443 U.S. 368 (1979) .......................................................................5

5

6

*Geragos et al. v. Yeghiayan et al.*,
   U.S. Dist. Ct., C.D. Cal., Case 11-CV-03043 ......................................2

7

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982) ............................................... 4, 5, 6

8

9

*Hagestad v. Tragesser*,
   49 F.3d 1430 (9th Cir. 1995).......................... 2, 3, 8, 10, 13, 14

10

*Jessup v. Luther*,
   277 F.3d 926 (7th Cir. 2002)........................................................10

11

12

*Kamakana v. City & Cnty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006)........................................ 4, 5, 6, 8

13

14

*Linex Tech., Inc. v. Hewlett-Packard Co.*,
   No. C 13-159, 2014 WL 6901744 (N.D. Cal. Dec. 8, 2014) ...........................12

15

*In re Marriage of Nicholas*,
   186 Cal. App. 4th 1566 (2010)........................................................5

16

*Mendez v. City of Gardena*,
   222 F. Supp. 3d 782 (C.D. Cal. 2015).................................................6

17

18

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) .......................................................................6

19

20

*Oregonian Publ'g Co. v. U.S. Dist. Ct.*,
   920 F.2d 1462 (9th Cir. 1990)....................................................4, 7

21

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*,
   156 F.3d 940 (9th Cir. 1998)...................................... 4, 5, 7, 14, 15

22

23

*Press-Enterprise Co. v. Superior Court*,
   464 U.S. 501 (1984) ("*Press-Enterprise I*") ........................... 3, 14, 15

24

25

*Press-Enterprise Co.* v. *Superior Court*,
   478 U.S. 1 (1986) .......................................................................7

26

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
   187 F.3d 1096 (9th Cir. 1999)....................................................4, 5

27

28

*SEC v. van Waeyenberghe*,
    990 F.2d 845 (5th Cir. 1993) ......................................................... 10, 11

*United States v. Beard*,
    475 F. App'x 665 (9th Cir. 2012) ......................................................6

*United States v. Bus. of Custer Battlefield Museum & Store*,
    658 F.3d 1188 (9th Cir. 2011) ..........................................................7

*United States v. Index Newspapers LLC*,
    766 F.3d 1072 (9th Cir. 2014) ........................................................15

*United States v. Kaczynski*,
    154 F.3d 930 (9th Cir. 1998) ..........................................................15

*Valley Broadcasting v. U.S. Dist. Ct.*,
    798 F.2d 1289 (9th Cir. 1986) ........................................................10

U.S. CONSTITUTION

First Amendment ................................................................ 4, 5, 6, 7, 8

FEDERAL RULES

Fed. R. Civ. Proc. 23(e) ....................................................................11

Fed. R. Civ. Proc. 23(e)(2)(C)(ii) ....................................................11

Fed. R. Civ. Proc. 23(e)(2)(C)(iii) ..................................................12

Fed. R. Civ. Proc. 24(a) .....................................................................5

CIVIL LOCAL RULES

Local Rule 79-5 ..................................................................................8

Local Rule 79-5(b) .............................................................................8

Local Rule 79-5.12 .............................................................................8

Local Rule 79-7.2 ............................................................................4, 5

MISCELLANEOUS

Cal. State Bar Rule 2302(d)(1)(A), (B) ...........................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF PERTINENT FACTS AND ARGUMENT

Between 1915 and 1920, as many as 1.5 million people were slaughtered in the Armenian Genocide.  Some two hundred thousand people of Armenian descent live in the Los Angeles area, many of whom are related to victims of the Armenian Genocide.

As the Court is aware, this class-action case involved approximately 13,000 claims by heirs and descendants of genocide victims who sought unpaid survivor benefits from insurance company, AXA S.A.  The court approved settlement in the case for $17.5 million.  From that settlement, $11.35 million was designated to pay individual claims by descendants, $3.15 million for legal fees and administrative costs, and $3 million for a Community Fund to disburse money to charitable organizations.  Any monies remaining after payment of individual claims were added to the Community Fund.  Class counsel nominated charitable organizations to receive donations from the Community Fund and the Court approved these distributions.

The settlement became mired in allegations of misconduct.  In 2011, two class counsel, Mark Geragos and Brian Kabateck, filed suit against the third class counsel, Vartkes Yeghiayan, and his wife, Rita Mahdessian for alleged misappropriation of funds. Yeghiayan and members of the court-appointed settlement board countered with similar allegations against Kabeteck and Geragos.  Another attorney, Berj Boyajian, was accused of misappropriating hundreds of thousands of dollars of settlement money.

The suit brought by Geragos and Kabateck was settled on confidential terms before a trial or substantive adjudication had taken place.  The State Bar of California brought disciplinary charges against Yeghiayan and Madhessian, but Yeghiayan died in 2017 before trial, and the case against Madhessian was ultimately dismissed.  The Court considered referring Boyajian to the State Bar, but opted not to do so. Subsequently, he was criminally prosecuted for preparing false documentary

1   evidence, and also suspended from the practice of law for improper use of his client

2   trust account and misappropriating settlement funds.

3          Despite this lack of resolution, court filings and transcripts show that attorneys

4   in the case and the Court expressed the belief that the AXA settlement had been

5   dramatically mishandled with funds missing repeatedly and over a period of years.

6   Roman Silberfeld, who represented Mr. Yeghiayan and who studied the financial

7   records in the case, described "considerable discrepancies" and "apparently clear

8   defalcations." *Geragos et al. v. Yeghiayan et al.*, U.S. Dist. Ct., C.D. Cal., Case 11-

9   CV-03043, Dkt. 32 at 13:6.  One of the class counsel, Brian Kabateck, reported

10  "extremely troubling evidence" of a "scheme" to "loot" nearly $1 million intended

11  for charities. *Kyurkjian, et al. v. AXA, S.A., et al.,* U.S. Dist. Ct., C.D. Cal., Case Dkt.

12  2:02-cv-0175-CAS-Mc, Dkt. No. 258 at 2, 6.  The Court observed during a 2011

13  hearing: "This whole thing is fraught with enormous problems" (Transcript, Nov. 21,

14  2011, at 11:6).  At a status conference the following year, the Court added, "We are

15  in a situation where plainly information was not kept with the care that I would have

16  liked or you would have liked. And I think to the class members, we owe some

17  principled explanation as to what we're doing and why we're doing it." *Kyurkjian*,

18  Dkt. 201 at 21:9-13.[2]

19          In spite of these concerns, the Court granted more than 40 orders to seal

20  documents dealing with matters of interest to the class and the public. They include

21  filings about the alleged misconduct, the investigation conducted by the lawyers and

22  the court, the propriety of reporting Boyajian to the bar, the distribution of settlement

23  funds and compensation of the lawyers beyond what the public settlement agreement

24  specified.  The Court ordered some records sealed based only on the generalized

25  claim of protecting purportedly "confidential" or "sensitive" information.  *See, e.g.,*

26  Dkt. Nos. 184 at 2-3, 185 at 4, 189.

27  _____

[2] All further docket entry references are to the *Kyurkjian* case.

28

Under the First Amendment and the common law, the press and the public have a strong presumption of access to court records.  *See*, *e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-1136 (9th Cir. 2003) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) ("In this circuit, we start with a strong presumption in favor of access to court records.").)  This heavy presumption of access includes records concerning court-approved settlements along with fee requests and awards in class actions.  *See id.*  In this case, the Court should unseal the records identified in at least 43 sealed docket entries, allowing news organization Los Angeles Times Communications LLC ("The Times") and the public to inspect the filings shedding light on allegations that some of the plaintiffs' attorneys improperly handled the Armenian Genocide survivor settlement funds and committed fraud. Likewise, unsealing these records would permit The Times and the public to learn how much the prevailing plaintiffs requested in attorneys' fees, how the Court resolved those fee claims and how those fee claims affected the amounts of money disbursed to charitable organizations and class plaintiffs.

As the Ninth Circuit stated last year, "Openness in judicial proceedings 'enhances both the basic fairness of the [proceeding] and the appearance of fairness so essential to public confidence in the system,' and forms 'an indispensable predicate to free expression about the workings of government.'"  *Courthouse News Service v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020) ("*Planet II*") (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*") and *Courthouse News Serv. v. Planet*, 750 F.3d 776, 779 (9th Cir. 2014) ("*Planet I*")).  The Ninth Circuit noted that the "news media's right of access is essential not only to its own free expression, but also to the public's."  *Id.* at 589 (citing *Planet I*, 750 F.3d at 786)  Here, access to these court records will enhance the public's understanding of what transpired in the awarding of attorneys' fees and settlement of this important class action concerning compensation for Armenian Genocide survivors and their descendants.

1      For all these reasons, The Times asks that the Court direct the Clerk to unseal

2  all sealed documents in this case, or, in the alternative, to unseal Docket Nos. 190

3  with exhibits, 283 (sealing transcript of July 18, 2013 call), 306, 307, 308, 309, 310,

4  317, 319, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 345, 346, 347, 348,

5  349, 350, 351, 352, 358, 359, 360, 361, 363, 364, 373, 374, 375, 377, 379, 381, 382,

6  383, and 384, or to direct the limited redaction and unsealing of such records.

7  **II.     ARGUMENT**

8      **A.     The Times Has Standing To Intervene To Vindicate Its And The**

9             **Public's Right Of Access To Judicial Records**.

10     The press and public have standing to move to unseal court records, as the First

11 Amendment right of access to the courts "extends to civil proceedings and associated

12 records and documents."  *Planet I*, 750 F.3d at 785; *see also Globe Newspaper Co. v.*

13 *Superior Court,* 457 U.S. 596, 610 & n. 25 (1982) (under the First Amendment,

14 "representatives of the press and general public must be given an opportunity to be

15 heard on the question of their exclusion" from access to courts); *Phoenix*

16 *Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998) (press must be

17 afforded an opportunity to object to closure of court proceedings); *Oregonian Publ'g*

18 *Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1464-65 (9th Cir. 1990) (same).

19     Intervention is the appropriate procedural vehicle for journalists to vindicate

20 public access rights.  *See, e.g., Kamakana v. City & Cnty. of Honolulu*, 447 F.3d

21 1172, 1176 (9th Cir. 2006); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d

22 1096, 1101 (9th Cir. 1999) (vacating trial court's order denying newspaper's motion

23 to intervene); *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th

24 Cir. 1992) ("Intervenors do not ask the district to rule on additional claims or seek to

25 become parties to the action. They ask the court only to exercise that power which it

26 already has, i.e., the power to modify the protective order."); C.D. Cal. L. Civ. R. 79-

27 7.2 ("A nonparty seeking access to a sealed document may intervene in a case for the

28

1   purpose of filing an application for disclosure of the document").[3]  As the court

2   observed in *California ex rel. Lockyer v. Safeway, Inc.*, 355 F. Supp. 2d 1111, 1124

3   (C.D. Cal. 2005), in unsealing documents at the request of an intervening newspaper,

4   "the press has historically served as a monitor of both the State and the courts, and it

5   plays a vital role in informing the citizenry on the actions of its government

6   institutions."  In cases where, as here, the First Amendment right of access is at issue,

7   intervention is constitutionally required.  *See Globe Newspapers Co.*, 457 U.S. at 609

8   n. 25, *Phoenix Newspapers, Inc.*, 156 F.3d at 949.  And, "[s]ince orders to seal court

9   records implicate the public's right of access under the First Amendment, they

10  inherently are subject to ongoing judicial scrutiny, including at the trial court level."

11  *In re Marriage of Nicholas*, 186 Cal. App. 4th 1566, 1575 (2010); *accord Kamakana*,

12  447 F.3d at 1186-87 (recognizing the authority of district court to modify prior

13  sealing orders).

14         Because The Times's right of access to judicial records would be materially

15  impaired by allowing the records at issue to remain sealed, its motion to intervene for

16  the limited purpose of unsealing court records in this case should be granted.  *See*

17  Fed. R. Civ. P. 24(a) and (b); L.R. 79-7.2.

18         **B.     The Court Records at Issue Are Presumptively Open, and Should Be**

19                 **Unsealed.**

20                 **1.     The Right of Access to Judicial Records Arises Under Both the**

21                          **First Amendment and Common Law.**

22         The public's and the press' right to access judicial records is well-entrenched in

23  American jurisprudence, reaching back to the earliest days of the Republic.  *San Jose*

24  _____

25  [3] *Accord In re Associated Press,* 162 F.3d 503, 508 (7th Cir.1998) ("*Associated Press II*") (reversing district court and instructing that "the Press ought to have been able to

26  intervene in order to present arguments against limitations on the constitutional or common law right of access"); *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1043,

27  1045-46 (D.C. Cir. 1998) (allowing intervention "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a

28  protective order").

1     *Mercury News*, 187 F.3d at 1102; *see also Gannett Co. v. DePasquale,* 443 U.S. 368,

2     386 n. 15 (1979) ("[f]or many centuries, both civil and criminal trials have

3     traditionally been open to the public. As early as 1685, Sir John Hawles commented

4     that open proceedings were necessary so 'that the truth may be discovered in civil as

5     well as criminal matters.'").  Currently, this right stems directly from the freedoms

6     guaranteed by the First Amendment.  *United States v. Beard*, 475 F. App'x 665, 668

7     (9th Cir. 2012) (stating that defendant had a "First Amendment right" to access

8     judicial records).  "[A] major purpose of [the First] Amendment was to protect the

9     free discussion of governmental affairs."  *Globe Newspapers*, 457 U.S. at 604

10    (internal quotations omitted).  "The right of access is thus an essential part of the First

11    Amendment's purpose to ensure that the individual citizen can effectively participate

12    in and contribute to our republican system of self-government." *Courthouse News*

13    *Serv.*, 750 F.3d at 785.

14        The Ninth Circuit has recognized that the right of access to judicial records in

15    civil proceedings arises both under the First Amendment and common law.  In *Planet*

16    *I*, the Ninth Circuit held that the First Amendment right of access "extends to civil

17    proceedings and associated records and documents."  750 F.3d at 786-787.  As the

18    Ninth Circuit observed, allowing the press to enforce the constitutional right in civil

19    proceedings "is essential not only to its own free expression, but also to the public's."

20    *Id.* at 786; *see also Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 789-92 (C.D.

21    Cal. 2015) (citing *Planet I* and granting Los Angeles Times's and The Associated

22    Press's motion to unseal records in civil lawsuit).

23        Following United States Supreme Court precedent, the Ninth Circuit also

24    recognizes a general right under the common law to inspect and copy "'judicial

25    records and documents.'"  *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d

26    1092, 1096 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589,

27    597 (1978)); *Kamakana*, 447 F.3d at 1178; *Foltz*, 331 F.3d at 1135.  As explained by

28    the court in *Kamakana*, "'[t]his right is justified by the interest of citizens in

1   'keep[ing] a watchful eye on the workings of public agencies.'"  *Kamakana*, 447 F.3d

2   at 1178 (quoting *Nixon*, 435 U.S. at 598).

3               **2.     The Burden to Justify Sealing Court Records is a Heavy One.**

4               Under the First Amendment and common law rights of access, the Court starts

5   from "a strong presumption in favor of access to court records." *Foltz*, 331 F.3d at

6   1135.  But the First Amendment provides "a stronger right of access than the

7   common law." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d

8   1188, 1197 n. 7 (9th Cir. 2011); *see also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64

9   (4th Cir. 1989) (distinction between rights afforded by the First Amendment and

10  common law "is significant").

11              While the First Amendment right of access is a qualified right, any party

12  seeking to seal court records subject to the right must meet a heavy burden to show

13  that: "(1) closure serves a compelling interest; (2) there is a substantial probability

14  that, in the absence of closure, this compelling interest would be harmed; and (3)

15  there are no alternatives to closure that would adequately protect the compelling

16  interest." *Phoenix Newspapers, Inc.*, 156 F.3d at 949 (citation omitted).

17              Before limiting access, the Court must "make specific factual findings" that

18  "satisfy all three substantive requirements for closure." *Id.* at 950; *see also*

19  *Oregonian Publ'g Co.*, 920 F.2d at 1466 ("[a]n order of closure should include a

20  discussion of the interests at stake, the applicable constitutional principles and the

21  reasons for rejecting alternatives, if any, to closure") (citations omitted).  Where such

22  findings are made, moreover, any closure ordered by the court must be narrowly

23  tailored in time and scope, and must be effective in protecting the compelling interest

24  at stake.  *See Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 14 (1986) (requiring

25  "on the record findings … demonstrating that 'closure is … narrowly tailored to serve

26  [the compelling] interest,'" and "that closure would prevent" the harm asserted)

27  (emphasis added) (citation omitted); *Associated Press v. U.S. Dist, Ct.,* 705 F.2d

28  1143, 1146 (9th Cir. 1983) ("there must be "a substantial probability that closure will

1   be effective in protecting against the perceived harm'") (citation omitted).

2       Under the common law, the party seeking to seal judicial records must

3   "articulate[ ] compelling reasons supported by specific factual findings… that

4   outweigh the general history of access and the public policies favoring disclosure,

5   such as the 'public interest in understanding the judicial process.'" *Kamakana*, 447

6   F.3d at 1178-79 (internal citations omitted).  The court must "conscientiously

7   balance[ ] the competing interests" of the public and the party who seek to keep

8   certain judicial records secret.  *Id*. (citing *Foltz*, 331 F.3d at 1135).  If the court

9   decides to seal – or keep sealed – certain judicial records, it must "base its decision

10  on compelling reasons and articulate the factual basis for its ruling, without relying

11  on hypothesis or conjecture." *Id.* (quoting *Hagestad*, 49 F.3d at 1434).[4]

12      Court records pertaining to settlement, attorneys' fees motions made by

13  counsel, and a potential referral to the State Bar are presumptively open to public

14  access.  There is no basis for the continued sealing of such records.  The standards for

15  sealing are not met under the First Amendment or the common law.

16              **3.    The Presumption of Openness Applies to the Court Records at**

17                      **Issue Here, And They Should Be Unsealed.**

18                  **a.    Records Pertaining to Court-Approved Settlements Are**

19                          **Presumptively Open.**

20      The Ninth Circuit holds that the "presumption of access is based on the need

21  for federal courts, although independent—indeed, particularly because they are

22  independent—to have a measure of accountability and for the public to have

23  confidence in the administration of justice." *Center for Auto Safety*, 809 F.3d at 1096

24  _____

25  [4]  Civil Local Rule 79-5 requires that a party seeking to seal judicial record "establish that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law."  Civ. L.R. 79-5(b).  The sealing

26  request must also "be narrowly tailored to seek sealing only of sealable material." Civ. L.R. 79-5(b).  To the extent Local Rule 79-5 and 79-5.12 impose lesser

27  standards or burdens than the First Amendment or common law, the rules should give way to the First Amendment and common law.

28

(internal quotation marks omitted).   In *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 169-170 (9th Cir. 1990), the Ninth Circuit applied the presumption to a consent decree that had been filed as part of a settlement and also sealed by the district court. The Ninth Circuit remanded to the district court to articulate the bases for its sealing order to determine whether it satisfied the law's stringent requirements.

Several other federal appellate courts have held that the public has a right of access to records concerning settlement agreements submitted to a court for review, approval and enforcement.  For example, in *Bank of America Nat'l Trust and Savings Assoc. v. Hotel Rittenhouse Associates*, 800 F.2d 339 (3d Cir. 1986), two parties filed a settlement agreement under seal, then the parties filed cross-motions to enforce the settlement agreement, and a third party sought access to the sealed settlement agreement.   *Id.* at 341.  The Third Circuit held that "the common law presumption of access applies to motions filed in court proceedings and to the settlement agreement between [the parties] which they filed and submitted to the district court for approval."  *Id.* at 343.  The court reasoned that "a settlement agreement filed with the court is a public document of a civil trial," and "the court's approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate."  *Id.* at 343-344.  The Third Circuit emphasized that parties who seek court approval of a settlement are not entitled to secrecy:

> Having undertaken to utilize the judicial process to interpret the settlement and to enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements.   Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records.

*Id.* at 345.  The court held that "[s]uch public access serves several … important interests," such as "promot[ing] 'informed discussion of governmental affairs by providing the public with [a] more complete understanding of the judicial system'

and the 'public perception of fairness which can be achieved only by permitting full public view of the proceedings.'" *Id.*  The Third Circuit held that, "[d]isclosure of settlement documents serves as a check on the integrity of the judicial process," and "assures 'that the courts are fairly run and judges are honest.'" *Id.*

In *Jessup v. Luther*, 277 F.3d 926 (7th Cir. 2002), the parties signed a settlement agreement, submitted it to the district judge, the judge "approved" the agreement and then sealed "all documents related to the settlement." *Id.* at 927.  A newspaper intervened to obtain a copy of the agreement, but the lower court denied the newspaper's request.  *Id.*  Judge Posner, writing for the Seventh Circuit, held that the settlement had to be unsealed because it was a public document reflecting the public acts of the court:  "Whatever the rationale for the judge's participation in the making of the settlement in this case, the fact and consequences of his participation are public acts. … The public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nudge the parties to agree to." *Id.* at 929.  "The Ninth Circuit," likewise, "has adopted the Seventh Circuit's approach for determining whether the common law right of access should be overridden, requiring courts to start with a strong presumption in favor of access." *Hagestad*, 49 F.3d at 1494 ("After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture"; citing *Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1295 (9th Cir. 1986)).

In *SEC v. van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993), the district court sealed the transcript of a settlement conference and the final order following settlement.  *Id.* at 847-848.  The Fifth Circuit held that the district court should not have sealed the court record, holding that "[o]nce a settlement is filed in district court, it becomes a judicial record," and the "presumption in favor of the public's common law right of access to court records therefore applies to settlement agreements that are filed and submitted to the district court for approval." *Id.* at 849.  Because the settled

1    final order in the matter was "filed and submitted to the district court for approval, …

2    the presumption of the public's common law right of access to judicial records is

3    applicable to the settlement documents, including the final order and transcript."  *Id.*;

4    *accord Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir.

5    1992) (applying presumption of openness to record where parties had settled case,

6    holding, "[i]t is immaterial whether the sealing of the record is an integral part of a

7    negotiated settlement between the parties, even if the settlement comes with the

8    court's active encouragement.  Once a matter is brought before a court for resolution,

9    it is no longer solely the parties' case, but also the public's case").

10          Here, the parties brought the settlement agreement to the Court for review,

11   approval and enforcement, as is required for approval of class action settlements.

12   Fed. R. Civ. Proc. 23(e) (class actions "may be settled, voluntarily dismissed, or

13   compromised only with the court's approval"); *see also* Fed. R. Civ. Proc.

14   23(e)(2)(C)(ii) (for settlement binding class members, "court may approve it only

15   after a hearing and only after finding that it is fair, reasonable, and adequate after

16   considering whether … the effectiveness of any proposed method of distributing

17   relief to the class, including the method of processing class-member claims").

18   However, several of the documents pertaining to the settlement – particularly the

19   Court's enforcement thereof – remain shielded from public view.  *See, e.g.,* Dkt. No.

20   190 (with exhibits).[5]  Because of that, the public is unable to understand and evaluate

21   the Court's rulings pertaining to the methods and effectiveness of distribution to the

22   class as well as to charitable organizations.  The pleadings and orders related to the

23   settlement and its enforcement are presumptively open, and the record does not

24   contain compelling reasons they should be kept secret, especially seven years later.

25   ///

26

27   _____
     [5] The Times believes that Dkt. No. 283, sealing the transcript of a July 18, 2021 call
28   with the Court, also relates to the settlement.

1

2      **b.      Court Records Pertaining to Counsel's Fees Motions**

3              **Are Presumptively Open, And Should Be Unsealed.**

4           Motions for attorneys' fees and supporting documents cannot be sealed without

5      a particularized showing that sealing is warranted—going beyond unilateral

6      assertions that the material is confidential.  *See*, *e.g.*, *Digital Reg of Tx., LLC v. Adobe*

7      *Sys., Inc.*, No. C 12-1971, 2015 WL 604055, at *1 (N.D. Cal. Feb. 11, 2015) (denying

8      requests to seal attorneys' fee motion and accompanying documents, including

9      proposed settlement values, because the declarations offered on behalf of sealing

10     merely stated that material had been designated highly confidential); *Linex Tech., Inc.*

11     *v. Hewlett-Packard Co.*, No. C 13-159, 2014 WL 6901744, at *1 (N.D. Cal. Dec. 8,

12     2014) (denying in part several requests to seal portions of fees motions and ruling,

13     "[a] party seeking to seal materials related to non-dispositive motions must show

14     good cause by making a particularized showing that specific prejudice or harm will

15     result should the information be disclosed") (internal quotation marks omitted);

16     *Ferrington v. McAfee, Inc.*, No. 10-CV-01455, 2013 WL 3814474, at *1-2 (N.D. Cal.

17     July 22, 2013) (denying motion to seal attorneys' fee motion and finding that a

18     simple statement of secrecy/privilege does not meet particularized showing standard);

19     *Delalat v. Nutiva, Inc.*, No. 16-cv-00711, 2018 WL 1087959, at *2 (N.D. Cal. Feb.

20     26, 2018) (denying request to seal exhibits in support of attorneys' fees motion

21     because simple designation of material as "confidential" under protective order did

22     not constitute a "compelling reason" for sealing).

23          The Court's review and approval of motions for attorneys' fees are also part of

24     the class settlement process.  Fed. R. Civ. Proc. 23(e)(2)(C)(iii) (for settlement

25     binding class members, the "court may approve it only after a hearing and only after

26     finding that it is fair, reasonable, and adequate after considering whether … the relief

27     provided for the class is adequate, taking into account … the terms of any proposed

28     award of attorney's fees, including timing of payment …").  Here, at the parties'

─────────────────────────────────────

                                      -12-        LATC'S MOTION TO INTERVENE TO UNSEAL
                                                                            RECORDS

1   request, the Court sealed many, if not most, of the records related to counsels' fees

2   motions.  *See, e.g.,* Dkt. Nos. 308, 309, 310, 317, 319, 325, 326, 327, 328, 329, 330,

3   331, 334, 335, 347, 348, 349, 352, 358, 361, 363, 364.[6]  The sealing requests were

4   obtuse and lacked any detail.  One application simply asserted that certain

5   information needed to be sealed because, *inter alia*, it discussed a "detailed pattern of

6   investigation into improper handling and distribution of AXA settlement funds," as

7   well as "attorney billing rates."  Dkt. No. 320 at 2:3, 3:27-28, 4:2.  The Court's order

8   approving sealing just stated that there was "good cause thereon."  Dkt. No. 321 at

9   1:22.   The Court's ultimate ruling on the fees motions publicly approved a stipulated

10  disbursal of $1,000,000 in attorneys' fees, Dkt. Nos. 370 & 371, but documents

11  supporting the fees motions themselves are still sealed.  Even the sealing orders that

12  apparently relate to fee applications are themselves sealed, and may not contain the

13  basis for sealing the motions and related papers as required under the First

14  Amendment or common law.  *See, e.g.,* Dkt. Nos. 307, 333, 345, 360, 374.  Thus, the

15  public cannot evaluate and understand the basis for the Court's ruling on the fees

16  motions, which is particularly important in a case like this one with a substantial

17  public interest in the allocation (and potential misappropriation) of funds to the class

18  counsel.

19              c.      **Court Records Pertaining to this Court's Potential State**

20                      **Bar Referrals Should Also Be Disclosed.**

21          As one federal district court has explained, "the public's interest in access to a

22  proceeding involving the State's allegations of *harm to the public* weighs especially

23  heavily in favor of access."  *California ex rel. Lockyer*, 355 F. Supp. 2d at 1124

24  (emphasis in original).  In *Hagestad*, the Oregon State Bar sought to obtain sealed

25  records from a civil district court proceeding involving an attorney accused of having

26

27  _____
    [6] The Times believes that Dkt. Nos. 306, 307, 332, 333, 345, 346, 350, 351, 359, 360,
28  373, 374 also relate to attorney fees requests.

_____

                                        -13-        LATC'S MOTION TO INTERVENE TO UNSEAL
                                                                                    RECORDS

sexual relations with a minor.  49 F.3d at 1431.  The attorney under investigation moved to seal the entire court record, which the court granted without giving "any reasons to justify the sealing."  *Id.* at 1432.  The Ninth Circuit vacated the district court's order, finding that the presumption of openness applied to the court records.  *Id.* at 1435; *accord* Cal. St. Bar R. 2302(d)(1)(A), (B) (transparency of State Bar records is warranted where it would promote "public confidence in the discipline system's exercise of self-regulation," or if the "underlying allegations" are sufficiently grave, or if a member of the Bar "has committed criminal acts or is under investigation by law enforcement authorities"); *Chronicle Publ'g Co. v. Superior Court*, 54 Cal. 2d 548, 567 (1960) (history of State Bar Act shows disclosure is proper when it is "in the public interest").

Here, the Court solicited reports from counsel as to whether Mr. Boyajian, who was criminally prosecuted, should be referred to the State Bar for further investigation into potential misconduct.  Dkt. No. 371.[7]  Counsel filed reports, which were sealed.  *See, e.g.* Dkt. Nos. 377, 383, 384.[8]  The Court ultimately determined that "a referral should not be made at this time," Dkt. 380. Without the underlying documents to understand the basis for the Court's decision, the public cannot evaluate Boyajian's role in the controversies and alleged misconduct surrounding the disbursement of settlement funds.

**C.    The Court's Prior Sealing Orders Are Not Narrowly Tailored.**

As the United States Supreme Court stated in *Press-Enterprise I*, 464 U.S. at 512-513, any sealing of proceedings or documents must be limited to "information that was actually sensitive."  Rather than blanket sealing, redactions should be

---

[7] The Court notified the parties that 20 and 25 year prior, her husband's law firm had represented the law firm of Stemple & Boyajian in unrelated litigation.  (June 26, 2011 Hearing Tr. at 3:14-25-4:1-10.)  Counsel for the parties did not have any objections based on the disclosure.  (Docket No. 221 – June 26, 2012 Minute Order with notice of disclosure.)

[8] The Times believes that Dkt. Nos. 379, 381 and 382 also relate to the State Bar referral issue.

considered – and expressly found ineffective – before entire documents are sealed. *See Phoenix Newspapers*, 156 F.3d at 947, 951 (reversing blanket sealing of transcript because "[e]ven where denial of access is appropriate, it must be no greater than necessary to protect the interest justifying it" and "redactions would have safeguarded jurors' anonymity"); *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 (9th Cir. 2014) ("redaction is an adequate alternative to closure … and should sweep no more broadly than necessary to protect [the compelling state interest]").  For example, in *United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir. 1998), the Ninth Circuit redacted small portions of a psychiatric report about the Unabomber to protect the privacy of third parties, but granted the public access to the "vast bulk" of the report.

Finally, the court must find that there is no less restrictive alternative to achieve the overriding interest identified, before any portion of the court proceeding or court record can be kept from the public.  *See, e.g.*, *Press-Enterprise I*, 464 U.S. at 513. Although the purported basis for requesting the sealing orders is not easy to determine, since many of the filings were made in secret, the public record does not contain any specific findings demonstrating that no less restrictive alternative exists other than to withhold the records from public access.

The Times moves the Court to unseal all of the sealed records at issue, as well as any other sealed records, whether filed by parties/counsel or entered by the Court, related to the distribution of settlement funds, attorneys' fees and potential State Bar referrals.  If the Court is not inclined to unseal all of the records at issue, The Times respectfully requests that at least portions of the records be unsealed, which can be done by redacting the pertinent records and unsealing the redacted records.  Only those narrow portions of records may be sealed, if any, where the party advocating secrecy can establish a compelling interest in sealing and that such sealing is narrowly tailored and the least restrictive alternative.  All other portions should be released for public view.

1

2   Dated:  September 27, 2021                JASSY VICK CAROLAN LLP

3

4                                            By:   ___/s/ Jean-Paul Jassy

5                                            Jean-Paul Jassy
                                             Attorneys for Proposed Intervenor
6                                            Los Angeles Times Communications
                                             LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JEAN-PAUL JASSY

I, Jean-Paul Jassy, declare as follows:

1.      I am an attorney admitted to practice before this Court.  I am a partner of Jassy Vick Carolan LLP, counsel of record for proposed intervenor Los Angeles Times Communications LLC ("The Times") in the action styled, *Kyurkjian, et al. v. AXA, S.A., et al.*, U.S. District Ct., Central District of California, Case No. 2:02-cv-0175-CAS-Mc (the "Action").  This Declaration is submitted in support of The Times' motion to invervene and unseal records (the "Motion") in the Action.  The matters stated in this Declaration are true of my own personal knowledge.

2.      On September 14, 2021, I sent an email to the lead attorney, non-terminated counsel of record in the Action, as well as Berj Boyajian, Esq., inviting counsel to a Local Rule 7-3 conference of counsel to discuss The Times' proposed Motion in the Action.  My initial email explained what records The Times hopes to unseal, and stated the bases for the Motion.  I proposed two dates/times for telephonic conferences, and supplied conference call details.  Over the next few days, various counsel asked for additional dates/times, and I provided two additional dates/times for telephonic conferences, for a total of <u>four</u> options to discuss the Motion over the course of September 16, 17 and two on September 20, 2021.

3.      For the first two teleconferences – on September 16 and 17, 2021 – I dialed in at the appointed time, and waited 15 minutes each time, but no one else joined the line.

4.      In the morning of September 20, Lee Boyd, Esq. and Roman Silberfeld, Esq. joined the conference line, and we discussed the proposed Motion.  Ms. Boyd said that her client, the Settlement Fund Board, took no position on the Motion.  Mr. Silberfeld, who had represented the late Vartkes Yeghiayan, said that he would review the documents at issue (which had all been listed in my original email of September 14), and would let me know his position by Friday, September 24, 2021.  As of the filing of this Declaration, I have heard nothing further from Mr. Silberfeld.

1   When we spoke on the phone, Mr. Silberfeld also said he would connect with two

2   other attorneys, Mark Geragos, Esq. and Brian Kabateck, Esq., to discuss the Motion,

3   and Mr. Silberfeld recommended that I contact counsel for defendant AXA.  I

4   explained that I had already emailed counsel for AXA, and received no response, but

5   I would try reaching out to AXA's counsel directly.

6          5.     Shortly after speaking with Ms. Boyd and Mr. Silberman, I spoke by

7   telephone with Matthew Marmalejo, Esq., counsel for AXA.  Mr. Marmalejo told me

8   that AXA "probably will not take a position" on the Motion, but that he would find

9   out and reach out.  As of the filing of this Declaration, I have heard nothing further

10  from Mr. Marmalejo about AXA's position, if any, on the Motion.

11         6.     Shant Karnikian, Esq. a partner at Mr. Kabateck's law firm and I spoke

12  by telephone in the afternoon of September 20, 2021.  Mr. Karnikian told me that Mr.

13  Kabateck took no position one way or the other on the Motion.

14         7.     The one attorney I heard from by email, but did not connect with by

15  telephone, with was Mr. Geragos.  After I sent my initial email on Septebmer 14, Mr.

16  Gergaos sent me an email shortly thereafter informing me that he would be out of the

17  country on September 20, but he did not state that he was unavailable on September

18  16 or 17 during either of the times I invited everyone to conference calls.  I sent

19  another email to everyone, including Mr. Geragos, later in the day on September 14,

20  noting again that I had set up conference call times on Septebmer 16 and 17, and that

21  I was adding a time on September 20.  Mr. Geragos did not join me on the conference

22  line on September 16.  In the morning of September 17, Mr. Geragos sent another

23  email noting that he was unvaible on September 20.  I responded that I had made

24  myself available the day before (September 16), and that I was also available for a

25  call on September 17.  Mr. Geragos responded that he was "unavailable" – intimating

26  for the first time that he was unavailable on September 17.   I invited Mr. Geragos to

27  call me at any point on September 17.  He responded that he could "find some

28  available times."  As of the filing of this Declaration, Mr. Gergagos has not called me

1    or offered any times to speak.  Attached to this Declaration as Exhibit A is a true and

2    correct copy of my email correspondence with Mr. Geragos (and others) concerning

3    the foregoing issues.

4         I declare under penalty of perjury under the laws of the United States of

5    America that the foregoin is true and correct.  Executed in Los Angeles County,

6    California on September 27, 2021.

7

8                                                     /s/ Jean-Paul Jassy

9                                               Jean-Paul Jassy

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

---------- Forwarded message ----------
From: **Mark Geragos** <mark@geragos.com>
Date: Fri, Sep 17, 2021 at 10:13 AM
Subject: Re: [EXTERNAL] Kyurkjian, et al. v. AXA, S.A. - Conference of Counsel
To: Jean-Paul Jassy <jpjassy@jassyvick.com>


I'm in a Zoom as we speak and can't do today as I have a full schedule. If we aren't doing these as a group call that's a different calculation and I can find some available times

On Fri, Sep 17, 2021 at 1:06 PM Jean-Paul Jassy <jpjassy@jassyvick.com> wrote:
> Mark,
> I am on the conference line right now.  Dial-in Number: (267) 930-4000; Participant Access Code: 145-344-045.
> If you can't make it now, I'd be happy to speak with you another time today, but please let me know so we can coordinate.
> Thanks,
> JP


**\*\* PLEASE NOTE NEW OFFICE ADDRESS \*\***

**Jean-Paul Jassy**

Jassy Vick Carolan LLP | 310-870-7048 | jpjassy@jassyvick.com
355 S. Grand Ave., Suite 2450 | Los Angeles, CA 90071
jassyvick.com

JASSY VICK CAROLAN
LOS ANGELES · SAN FRANCISCO

This email may contain confidential and/or privileged material.  Any review or distribution by anyone other than the intended recipient is strictly prohibited.  If you are not the intended
recipient, please contact the sender and delete all copies of this email immediately.  This email does not establish an attorney-client relationship.


---------- Forwarded message ----------
From: **Jean-Paul Jassy** <jpjassy@jassyvick.com>
Date: Fri, Sep 17, 2021 at 9:38 AM
Subject: Re: [EXTERNAL] Kyurkjian, et al. v. AXA, S.A. - Conference of Counsel
To: Mark Geragos <mark@geragos.com>
Cc: Ana Gonzalez <ag@kbklawyers.com>, Brian Kabateck <bsk@kbklawyers.com>, FReinke@mayerbrown.com <FReinke@mayerbrown.com>, Geibelson, Michael A.
<MGeibelson@robinskaplan.com>, Kirk D. Dillman <KDillman@mckoolsmithhennigan.com>, Shant Karnikian <sk@kbklawyers.com>, Silberfeld, Roman M.
<RSilberfeld@robinskaplan.com>
, berj@boyajianfirm.com <berj@boyajianfirm.com>, bfisher557@aol.com <bfisher557@aol.com>, lboyd@hechtpartners.com <lboyd@hechtpartners.com>, meiselas@geragos.com <meiselas@...
, tarthur@frandzel.com <tarthur@frandzel.com>


No.  I've now made myself open for four separate conference line meet and confers.  That is more than enough good faith effort.  You didn't tell me you were unavailable yesterday and
today until two minutes ago.  I'd be happy to connect with you another time today if you'd like, but I am not going to hold up this motion.

**\*\* PLEASE NOTE NEW OFFICE ADDRESS \*\***
**Jean-Paul Jassy**
Jassy Vick Carolan LLP | 310-870-7048 | jpjassy@jassyvick.com
355 S. Grand Ave., Suite 2450 | Los Angeles, CA 90071
jassyvick.com

JASSY VICK CAROLAN
LOS ANGELES · SAN FRANCISCO

This email may contain confidential and/or privileged material.  Any review or distribution by anyone other than the intended recipient is strictly prohibited.  If you are not the intended
recipient, please contact the sender and delete all copies of this email immediately.  This email does not establish an attorney-client relationship.


On Fri, Sep 17, 2021 at 9:35 AM Mark Geragos <mark@geragos.com> wrote:
> Also is it your intent to have separate conversations with every one?

> On Fri, Sep 17, 2021 at 12:34 PM Mark Geragos <mark@geragos.com> wrote:
> > Thanks and as I noted there is no urgency and I am unavailable

> > On Fri, Sep 17, 2021 at 12:32 PM Jean-Paul Jassy <jpjassy@jassyvick.com> wrote:
> > > And, as I've noted, I was open for a teleconference yesterday and another today.


> > > **\*\* PLEASE NOTE NEW OFFICE ADDRESS \*\***
> > > **Jean-Paul Jassy**
> > > Jassy Vick Carolan LLP | 310-870-7048 | jpjassy@jassyvick.com
> > > 355 S. Grand Ave., Suite 2450 | Los Angeles, CA 90071
> > > jassyvick.com


JASSY VICK CAROLAN
LOS ANGELES · SAN FRANCISCO


> > > This email may contain confidential and/or privileged material.  Any review or distribution by anyone other than the intended recipient is strictly prohibited.  If you are not the
> > > intended recipient, please contact the sender and delete all copies of this email immediately.  This email does not establish an attorney-client relationship.

On Fri, Sep 17, 2021 at 9:31 AM Mark Geragos <mark@geragos.com> wrote:
Thanks all and Jean Paul, as I noted I'm not available next week but can make myself available the following week

On Fri, Sep 17, 2021 at 12:13 PM Jean-Paul Jassy <jpjassy@jassyvick.com> wrote:
Roman,

My condolences.  Yes, per your request, in addition to the other times that I've noted, I will be on the same conference line noted below at 10am on Monday, Sep. 20.

Best,
JP

**\*\* PLEASE NOTE NEW OFFICE ADDRESS \*\***

**Jean-Paul Jassy**
Jassy Vick Carolan LLP | 310-870-7048 | jpjassy@jassyvick.com
355 S. Grand Ave., Suite 2450 | Los Angeles, CA 90071
jassyvick.com



This email may contain confidential and/or privileged material.  Any review or distribution by anyone other than the intended recipient is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies of this email immediately.  This email does not establish an attorney-client relationship.

On Fri, Sep 17, 2021 at 7:18 AM Silberfeld, Roman M. <RSilberfeld@robinskaplan.com> wrote:
Jean-Paul,
I'm not available now on Monday at 2:30 PM because I have to step in for a colleague who had a death in the family. I can talk with you though between 930-1130 am on Monday. Please let me know if that timeframe works for you

ROMAN
Sent from my iPhone

On Sep 14, 2021, at 6:09 PM, Jean-Paul Jassy <jpjassy@jassyvick.com> wrote:


To accommodate Roman's schedule, I'll set up a third date to meet and confer on Monday, Sep. 20 at 2:30pm Pacific at the same dial-in referenced in my prior email.  I'll be on the line ready to meet and confer each of the three times I've mentioned on Sep. 16, 17 and 20.

Thanks,
JP

**\*\* PLEASE NOTE NEW OFFICE ADDRESS \*\***

**Jean-Paul Jassy**
Jassy Vick Carolan LLP | 310-870-7048 | jpjassy@jassyvick.com
355 S. Grand Ave., Suite 2450 | Los Angeles, CA 90071
jassyvick.com

This email may contain confidential and/or privileged material.  Any review or distribution by anyone other than the intended recipient is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies of this email immediately.  This email does not establish an attorney-client relationship.

 Virus-free. www.avast.com

On Tue, Sep 14, 2021 at 5:31 PM Brian Kabateck <bsk@kbklawyers.com> wrote:
Jean-Paul:
I am including my partner, Shant Karnikian, as well as my outside counsel, Kirk Dillman.  When this is reset please coordinate with them.
Thank you and give Kevin my regards.
Brian

**From:** Silberfeld, Roman M. <RSilberfeld@RobinsKaplan.com>
**Sent:** Tuesday, September 14, 2021 5:09 PM
**To:** Jean-Paul Jassy <jpjassy@jassyvick.com>
**Cc:** Ana Gonzalez <ag@kbklawyers.com>; bfisher557@aol.com; Brian Kabateck <bsk@kbklawyers.com>; mark@geragos.com; ritaqik@yahoo.com; vartkesy@sbcglobal.net; meiselas@geragos.com; rlk@kellnerlaw.com; smalzahn@bakermarquart Shant Karnikian <sk@kbklawyers.com>; jboyd@hechtpartners.com; rsteingard@steingardlaw.com; stephensadowskylaw@gmail.com; tarthur@frandzel.com; trobins@frandzel.com; Geibelson, Michael A. <MGeibelson@RobinsKaplan.com>; FReinke@mayerbrown.com; mmarmolejo@mayerbrown.com; berj@boyajianfirm.com
**Subject:** Re: [EXTERNAL] Kyurkjian, et al. v. AXA, S.A. - Conference of Counsel

Jean-Paul,
I'm out of town and unavailable (due to all day commitments) to join a call about this subject. I return Sunday September 19 and am willing to have a call in the first few business days thereafter. Setting a call on 2-3 days notice, given the breadth of what you're seeking, the number of parties and counsel involved and the fact that many of these matters are 8 years old appears unreasonable so please reset the call for a convenient time for everyone next week. You can remove Mr. Yeghiayan from your email list as he is deceased.

ROMAN

Sent from my iPhone

On Sep 14, 2021, at 3:54 PM, Jean-Paul Jassy <jpjassy@jassyvick.com> wrote:

Dear Counsel,

I represent Los Angeles Times Communications LLC ("The Times"), and I write pursuant to C.D. Cal. Local Rule 7-3 to discuss The Times' anticipated motion to unseal records in Kyurkjian, et al.  v. AXA, S.A., et al., C.D. Cal., Case No. 2:02-cv-0175-CAS-Mc.

Pursuant to the First and Fourteenth Amendments to the United States Constitution, Article 1, section 3 of the California Constitution, the common law, the Court's inherent authority, and Local Civil Rule 79-7.2 of the United States District Court for the Central District of California, The Times intends to move the Court to unseal records, including without limitation, Docket Nos. 190 with exhibit,  transcript of 7/18/13 call sealed by 283, 306, 307, 308, 309, 310, 317, 319, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 345, 346, 347, 348, 349, 350, 351, 352, 358, 359, 360, 361, 363, 364,  373, 374, 375, 377, 379, 381, 382, 383, and 384.

I will hold a telephonic conference of counsel on Sep. 16 at 2pm Pacific.  Here are the dial-in details:  Dial-in Number: (267) 930-4000; Participant Access Code: 145-344-045.

If any of you are unable to make the Sep. 16 conference, please let me know, and I can hold a second telephonic conference of counsel on Sep. 17 at 10am Pacific with the same dial-in details.

Thank you,
JP Jassy

**\*\* PLEASE NOTE NEW OFFICE ADDRESS \*\***
**Jean-Paul Jassy**
Jassy Vick Carolan LLP | 310-870-7048 | jpjassy@jassyvick.com
355 S. Grand Ave., Suite 2450 | Los Angeles, CA 90071
jassyvick.com

This email may contain confidential and/or privileged material.  Any review or distribution by anyone other than the intended recipient is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies of this email immediately.  This email does not establish an attorney-client relationship.

Virus-free. www.avast.com

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins Kaplan LLP
http://www.robinskaplan.com

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 355 S. Grand Ave., Suite 2450, Los Angeles, California 90071.

On September 27, 2021, I served true copies of the following document(s) described as:

**PROPOSED INTERVENOR LOS ANGELES TIMES COMMUNICATIONS LLC'S NOTICE OF MOTION AND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF JEAN-PAUL JASSY WITH EXHIBIT A**

on the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

☑     **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 27, 2021 at Los Angeles, California.

_____
Jean-Paul Jassy

PROOF OF SERVICE

# SERVICE LIST

| | |
|---|---|
| Artin Gholian<br>Brian S. Kabatech<br>Kabeteck Kellner LLP<br>644 South Figueroa Street<br>Los Angeles, CA 90017<br>Email: ag@kbklawyers.com;<br>bsk@kbklawyers.com | Stephen B Sadowsky<br>Law Offices of Stephen B. Sadowsky<br>3700 Lowry Road<br>Los Angeles, CA 90027<br>Email: stephensadowskylaw@gmail.com |
| Rita Mahdessian<br>Vartkes Yeghiayan<br>Yeghiayan and Associates<br>535 N Brand Blvd., Suite 270<br>Glendale, CA 91203<br>Email: ritagik@yahoo.com;<br>vartkesy@sbcglobal.net | Mark John Geragos<br>Benjamin Jared Meiselas<br>Geragos and Geragos PC<br>644 South Figeuroa Street<br>Los Angeles, CA 90017<br>Email: mark@geragos.com;<br>meiselas@geragos.com |
| Fred W Reinke<br>Mayer Brown, LLP<br>1999 K Street, N.W.<br>Washington, DC 20006<br>Email: freinke@mayerbrown.com | Richard L Kellner<br>Kellner Law Group PC<br>1180 South Beverly Drive, Suite 610<br>Los Angeles, CA 90035<br>Email: rlk@kellnerlaw.com |
| Scott Matthew Malzahn<br>Baker Marquart LLP<br>2029 Century Park East, Suite 1600<br>Los Angeles, CA 90067<br>Email: smalzahn@bakermarquart.com | Shant Arthur Karnikian<br>Kabateck Brown Kellner LLP<br>633 W. Fifth Street, Suite 3200<br>Los Angeles, CA 90071<br>Email: sk@kbklawyers.com |
| Kathryn Lee Boyd<br>Pierce Bainbridge Beck Price Hecht LLP<br>355 South Grand Avenue, 44th Floor<br>Los Angeles, CA 99071<br>Email: lboyd@hechtpartners.com | Richard M. Steingard<br>Law Offices of Richard M. Steingard<br>800 Wilshire Boulevard, Suite 1050<br>Los Angeles, CA 90017<br>Email: rsteingard@steingardlaw.com |
| Barry A Fisher<br>Fleishman and Fisher<br>1925 Century Park East, Suite 2000<br>Los Angeles, CA 90067<br>Email: bfisher557@aol.com | Thomas S Arthur<br>Frandzel Robins Bloom and Csato LC<br>6500 Wilshire Boulevard, 17th Floor<br>Los Angeles, CA 90048<br>Email: tarthur@frandzel.com |

| | |
|---|---|
| Thomas M Robins, III<br>Frandzel Robins Bloom and Csato, LC<br>1000 Wilshire Boulevard, 19th Floor<br>Los Angeles, CA 90017<br>Email: trobins@frandzel.com | Michael A Geibelson<br>Roman M. Silberfeld Robins Kaplan LLP<br>2049 Century Park East, Suite 3400<br>Los Angeles, CA 90067<br>Email: mgeibelson@robinskaplan.com;<br>rsilberfeld@robinskaplan.com |
| Matthew Henry Marmolejo<br>Mayer Brown LLP<br>350 South Grand Avenue, 25th Floor<br>Los Angeles, CA 90071<br>Email:<br>mmarmolejo@mayerbrown.com | |

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 355 S. Grand Ave., Suite 2450, Los Angeles, California 90071.  On **September 27, 2021**, I served true copies of the following document(s) described as:

**PROPOSED INTERVENOR LOS ANGELES TIMES COMMUNICATIONS LLC'S NOTICE OF MOTION AND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF JEAN-PAUL JASSY WITH EXHIBIT A**

on the interested parties in this action as follows:

Berj Boyajian
Boyajian & Associates
556 Chalette Dr.
Beverly Hills, CA 90210
Email: berj@boyajianfirm.com

☑      **BY FEDERAL EXPRESS OVERNIGHT DELIVERY:**  I enclosed said document(s) in an envelope(s) or package(s) provided by FedEx and addressed to the person(s) at the address(es) listed above.  I placed the envelope(s) or package(s) for collection and overnight delivery at an office or a regularly utilized drop box of FedEx.

☑      **BY ELECTRONIC MAIL (E-MAIL):**  I caused the said document(s) to be transmitted by e-mail to the person(s) at the email address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on **September 27, 2021** at Los Angeles, California.

Marlene Rios