GERAGOS & GERAGOS
Mark J. Geragos, Bar No. 108325
mark@geragos.com
Shelley Kaufman, Bar No. 100696
kaufman@geragos.com
644 South Figueroa Street
Los Angeles, CA 90017
Telephone:   213-625-3900
Facsimile:   213-625-1600

KABATECK BROWN KELLNER LLP
Brian S. Kabateck, Bar No. 152054
bsk@kbklawyers.com
644 South Figueroa Street
Los Angeles, CA 90017
Telephone:   213-217-5000
Facsimile:   213-217-5010

Vartkes B. Yeghiayan, Bar No 41773
vartkes@vylaw.com
THE YEGHIAYAN LAW FIRM
535 N. Brand Blvd.
Glendale, CA 91203
Telephone:   818-242-7400
Facsimile:   818-242-0114

Attorneys for Plaintiffs and the Settlement Class
*(Counsel continued on next page)*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFIK KYURKJIAN, *et al.*, individually and on behalf of all other similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>AXA, S.A., et al.,<br><br>             Defendants. | Case No. CV 02-01750 CAS (MCx)<br><br>**JOINT STATUS REPORT OF CLASS COUNSEL WITH RESPECT TO THE CLAIMS EVALUATION AND CLAIMS PROCESSING REVIEW; RECOMMENDATIONS FOR FURTHER ACTION [LODGED FOR FILING UNDER SEAL]**<br><br>Date:      December 10, 2013<br>Time:      12:00<br>Location:  By Phone<br>Before:    Hon. Christina A. Snyder |

60718774.1

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Roman M. Silberfeld, Bar No. 62783
RMSilberfeld@rkmc.com
Michael A. Geibelson, Bar No. 179970
MAGeibelson@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  310-552-0130
Facsimile:   310-229-5800

Attorneys for Class Counsel VARTKES YEGHIAYAN

TO THIS HONORABLE COURT:

Class Counsel respectfully submit this joint status report under seal in advance of the December 10, 2013 Status Conference.

## I.

## INTRODUCTION AND SUMMARY OF CASE STATUS

As this Court is aware, serious questions have been raised concerning the accuracy and completeness of the claims evaluation and payment processing with respect to this class settlement.  Class Counsel, their attorneys, and the accounting firm of Holthouse, Carlin, and Van Tright ("HCVT") have resolved nearly all of these issues since the last status conference.  Some issues remain to be resolved.

A.    **Work Undertaken**

**1.**    Payment of AXA settlement funds:  Of the $2,176,587.24 in available funds as reported by the accounting firm HCVT in its June 12, 2013 audit report, $1,866,415.47, or 86%, has been paid to 144 out of the 159 claimants at issue.  Of the remaining 15 claimants, 2 are deceased and the purported heirs have failed to provide sufficient proof of heredity.  The other 13 have not responded to HCVT's attempts on August 31, 2012 and October 3, 2012 to contact them.  HCVT has made a good-faith effort to contact these 13 claimants at all known telephone numbers, emails, and addresses with no success.  The accounting firm's work is

60718774.1                                    - 2 -

1    now complete.

2      2.  **Investigations into suspicious activities:**

3        **a.  Investigations into fraudulent activities relating to Berj**

4          **Boyajian:**

5       As mentioned at the previous status conference, $194,166.00 from settlement

6    checks endorsed by Berj Boyajian was returned to the AXA Settlement Account at

7    First Republic Bank pursuant to the Court's order.   It remains unclear which

8    claimants may be entitled to this money, if any.

9       A preliminary review by counsel revealed that at least 17 checks in excess of

10   $312,363.00 were made payable to AXA claimants but were endorsed by Berj

11   Boyajian.   These checks were deposited into a "Boyajian and Associates" account

12   at Union Bank.

13      Boyajian also wrote checks to various individuals from the AXA settlement

14   fund that he took and deposited into his own Union Bank account.   Boyajian

15   returned $194,166.00 to the AXA settlement bank account on June 28, 2012.   The

16   difference of $118,197.00 has not been accounted for.

17      Boyajian submitted a declaration under oath attesting to these facts but still

18   refuses to answer any questions regarding how and why he came into possession of

19   the AXA settlement checks or his involvement in the claims administration.   He has

20   asserted his Fifth Amendment privilege on all substantive questions relating to the

21   AXA settlement.

22      Mr. Boyajian's counsel at Lightfoot, Steingard & Sadowsky LLP also

23   returned another $559,790.00 from nine settlement checks that were endorsed by

24   Mr. Boyajian and made payable to an AXA "claimant" named Zaven Haleblian.

25   On September 21, 2012 when Mr. Haleblian was deposed, he testified that he had

26   never heard of the AXA lawsuit, never made a claim for benefits under any AXA

27   life insurance policy, and does not know of anyone who has made a claim for

28   benefits under the AXA settlement.   Mr. Haleblian explained that Boyajian is a

1   close childhood friend, and Haleblian gave Boyajian power of attorney to manage

2   Haleblian's bank account at Pacific Western Bank.  The power of attorney only

3   authorized Boyajian to manage the Pacific Western Bank account and did not give

4   Boyajian the authority to open other accounts.

5       In April 2012, Haleblian first discovered that Boyajian had opened another

6   bank account in Haleblian's name at First California Bank and $574,525.00 was

7   deposited into that account.  Haleblian said that he did not endorse any of the AXA

8   settlement checks that were deposited into the account.  Following Haleblian's

9   deposition on October 12, 2012, the entire amount remaining on deposit at First

10  California Bank, $559,790.00, was paid into the AXA settlement fund at First

11  Republic Bank.  The difference of $14,735.00 has not been accounted for or traced.

12          **b.    Parsegh Kartalian:**

13

14      Mr. Kartalian, the AXA Claims Administrator, was deposed on May 15,

15  2012.  Subsequently, it was discovered that Mr. Kartalian paid over $300,000 from

    AXA Settlement funds to members of his immediate family. These include ▮▮▮

16  ▮▮▮▮, Kartalian's mother -in-law; ▮▮▮▮▮▮▮, Kartalian's wife;

17  ▮▮▮▮▮▮▮▮, Kartalian's sister-in-law and and ▮▮▮▮▮'s

18  sister; ▮▮▮▮▮▮, Kartalian's brother-in-law and the husband of ▮▮

19  ▮▮▮; and ▮▮▮▮▮, ▮▮▮▮▮'s and ▮▮▮▮▮'s son. Further

20  questioning of Mr. Kartalian is deemed appropriate and necessary.

21          **c.    Avedis Markarian:**

22      Mr. Markarian was a bank officer who worked closely with Mr. Kartalian

23  and the AXA settlement funds, as well as with Mr. Boyajian.  Mr. Markarian has

24  not been deposed because his scheduled deposition was cancelled due to a heart

25  condition.  Although not yet reset, it is believed that a deposition of Mr. Markarian

26  is appropriate and necessary however, it is expected that the deposition may be

27  limited to the assertion of the Fifth Amendment. 5. Ared   Mgerdich   and   Arusiag

28

JOINT STATUS REPORT

Menzilcian: Ared Mgerditch and Arusiag Menzilcian received almost $100,000 and are jewelers for Mr. Boyajian, although their claim file(s) do not exist. Thus, their depositions are appropriate and necessary.

**d.** ███████████████████:

Mr. ███████████, was issued 5 settlement checks, two of which were endorsed and deposited into Mr. Boyajian's account while the remaining three checks, totaling $310,500.00, appear to have been converted into thirteen cashier checks of different denominations. At this point and without further investigation, it would be impossible to determine whether or not these funds were used to legitimate ends by the intended and deserving recipient. It is believed that the deposition of Mr. ███████ is appropriate and necessary. It should be noted, however, that extensive investigations carried out by class counsel were unable to verify claimant's identity and physical address, which was given as Baghdad, Iraq. In the event that Mr. ███████ is unable to be located, counsel deems it appropriate and necessary to obtain bank records from Pacific Western Bank, which issued the cashier's checks to ███████, in order to discover the donors and the recipients of these funds.

It must be emphasized that the claim files belonging to ███████████, ███████████, ███████████████, ███████████, ███████, Ared Menzilcian, Arusyak Menzilcian, and ███████████████ do not exist.

**B.     Ongoing Work / Pending Issues**

    **1.     Missing claims files**:  The missing claims files still have not been located.

    **2.     Ongoing investigation of suspicious activities:**

Class Counsel is investigating other accounts that may have been opened or managed using forged or fraudulent documents. Counsel notified Pacific Western Bank and First California Bank and requested that they check the account opening forms, power of attorney forms, and any other relevant documents of the suspected accounts and the names Berj Boyajian, Albert Boyajian, and/or Boyajian & Associates as additional signatories or addressees to those accounts.  Pacific Western Bank initially refused to provide any information regarding the AXA settlement account or any of the suspected accounts, but has now released copies of all relevant documentation it has.

Class Counsel previously requested that First California Bank, Union Bank, Wells Fargo Bank, Bank of America, Pacific Western Bank, JP Morgan Chase, and Merchant Bank of California also check the account opening forms, power of attorney forms, and any other relevant documents of the suspected accounts and the names Berj Boyajian, Albert Boyajian, and/or Boyajian & Associates as additional signatories or addressees to those accounts.  First California Bank, Union Bank, Pacific Western Bank, and JP Morgan Chase have produced all the relevant documents that each has regarding the suspicious activity.  Merchant Bank of California has submitted a signed declaration stating that it has no such documentation on the suspected accounts.  Bank of America has sent checks written from a Boyajian trust account; otherwise, Bank of America states that it has no other relevant information.  Wells Fargo has not provided any information regarding Berj Boyajian, Albert Boyajian, and/or Boyajian & Associates despite multiple requests.

**C.**     <u>Issues Requiring Judicial Resolution</u>

    **1.**     **Unresolved Claimant Issues:**  Below.

    **2.**     **Application for Fees and Costs By Counsel and Accounting Firm:** Below.

    **3.**     **Remaining funds in the AXA settlement account:**  Other than as described above and previously, there are no other claims remaining to be paid. However, there remains a surplus of funds in the AXA settlement accounts.  Class Counsel, the Geragos Firm, the Kabateck Firm and Mr. Yeghiayan have agreed to recommend the distribution of these remaining funds by allocating one third to each of them, and each will make recommendations to the Court as to how these funds should be distributed.  Class Counsel asks the Court to review these recommendations and provide instructions as to how this surplus should be handled.  RKMC, Yeghiayan, G & G, and KBK will ask the court to award them fees from this fund by motion prior to the distributions.

**II.**

**<u>THE WORK OF HCVT</u>**

**A.**     <u>Scope of Work</u>

    The accounting firm HCVT was retained to assist in resolving issues related to the settlement distribution process and help pay approved but unpaid claims. HCVT was directed to compare available information in the claim files, the lists of approved and denied claims, and the copies of distributed claims checks to locate inconsistencies in the claims processing.  HCVT has completed its work and has identified the discrepancies in the settlement distributions.  HCVT, Class Counsel, and their attorneys have resolved the majority of the issues relating to this settlement and have succeeded in ensuring the payment of the claims with few exceptions.  Although HCVT has been unable to contact 13 of the claimants, it has made a good-faith effort to notify these claimants at all known emails, addresses, and telephone numbers.

60718774.1

1      As mentioned, HCVT compared the information in claim files, the lists of

2  approved and denied claims, and the copies of checks to locate any inconsistencies

3  in the claims processing.  HCVT concluded that the total amount owed to approved

4  class members was $2,176,587.24 to be divided appropriately among 159

5  claimants.  Although HCVT reviewed and verified 198 claims, it determined that

6  only 159 claimants were owed money.   This determination does not include

7  claimants in the missing claim files group.

8      The 159 claimants were divided into two claim groups, Group A and Group

9  B.  Group A originally consisted of 93 claim files.  It was later determined that of

10  the 93 claims, only 76 claimants were actually owed money.   HCVT then

11  confirmed the correct approved amount for each claim and applied a 2.17 multiplier

12  to determine the amount owed to each claimant.  HCVT determined that a total of

13  $1,939,337.22 was owed to the claimants of Group A.

14      Group B originally consisted of 105 claim files in excess of $10,000.00 who

15  were believed to have received their full settlement amount but had not previously

16  been analyzed by Class Counsel.  It was then determined that only 83 of the 105

17  claimants were still owed money.    HCVT used the same methodology to analyze

18  Group B as it did to analyze Group A and determined that $237,250.02 was owed

19  to the claimants of Group B.

20      On June 14, 2012, the Court directed HCVT to serve as the claims

21  settlement, distribution, and payment agent for the purpose of issuing payments to

22  the 159 claimants.   In accordance with the Court's order, HCVT developed

23  protocols to effectuate the complete distribution of the $2,176,587.24 to the 159

24  claimants.   HCVT contacted the approved claimants; confirmed the current

25  addresses of the claimants who were to receive additional distributions by

26  telephone, mail, or email, as appropriate; verified the identity of the claimants;

27  processed payments to the claimants; and finally, monitored bank accounts to

28  determine when the processed payments were cleared by the banks and obtained

copies of any cancelled checks.

## B.   HCVT'S Findings and Distribution of Payments

**1.**         Findings for Group A:  As of the beginning of October , 2013, 66 out of the total 76 claimants in Group A have responded and been issued payment.  The monetary claim total for Group A is $1,939,337.22, and $1,631,665.44 (or about 84%) have been issued for payment.  There is $307,671.78 (or about 16%) of the claims total that remains undistributed, and there are 10 claimants that are unresponsive.  Of these10 claimants, 1 is deceased and the purported heir has failed to provide sufficient information to prove heredity, as discussed in greater detail below.  Therefore, this claim payment of $4,761.00 has not been released.

| Claim Total | Claims Paid | Total Non-Responsive | Total Claimants | Total Paid Claimants | Total Non-Responsive Claimants |
|---|---|---|---|---|---|
| $1,939,337.22 | $1,631,665.44 | $307,671.78 | 76 | 66 | 10 |
|  | 84% | 16% |  |  | 13% |

**2.**         Findings for Group B:     As of the beginning of October, 2013, 78 out of the total 83 claimants in Group B have responded and been issued payment.  The monetary claim total for Group B is $237,250.02 and, $234,750.03 (or 99%) has been issued for payment.  There are $2,499.99 (or about 1%) of the claims total that remain undistributed, and there are 5 claimants that are unresponsive.  Of these 5 claimants, 1 is deceased and the purported heir has failed to provide sufficient information to prove heredity, as discussed in greater detail below.  Therefore, this claim payment of $500.00 has not been released.

| Claim Total | Claims Paid | Total Non-Responsive | Total Claimants | Total Paid Claimants | Total Non-Responsive Claimants |
|---|---|---|---|---|---|
| $237,250.02 | $234,750.03 | $2,499.99 | 83 | 78 | 5 |
|  | 99% | 1% |  |  | 6% |

**3.** <u>Combined findings for Groups A and B</u>:      As of  the beginning of October, 2013, 144 out of the total 159 claimants for both groups have responded and been issued payment. The monetary claim total for Groups A and B is $2,176,587.24, and as of June 12, 2013, $1,866,415.47 (or 86%) has been issued for payment.  There is $310,171.77 (or about 14%) of the total claims that remain undistributed.  There are 15 claimants that have not responded.  Of the 15 claimants, 2 claimants are deceased and their purported heirs failed to provide proof that they are the true heirs to the estates, as discussed below.  Therefore, the payments were not disbursed to the alleged heirs of those deceased claimants.  The other 13 claimants have not responded after separate attempts by HCVT to contact them.

| Claim Total | Claims Paid | Total Non-Responsive | Total Claimants | Total Paid Claimants | Total Non-Responsive Claimants |
|---|---|---|---|---|---|
| $2,176,587.24 | $1,866,415.47 | $310,171.77 | 159 | 144 | 15 |
|  | 86% | 14% |  |  | 9% |

**4.** <u>Funds belonging to deceased AXA claimants</u>:      HCVT confirmed that the following 4 claimants with a combined claim amount of $18,233.00 are deceased:

| Claimant | Group A or B | Claim Amount |
|---|---|---|
| ███████████ | Group A | $3,450.00 |
| ███████████ | Group A | $9,522.00 |
| ███████████ | Group A | $4,761.00 |
| ███████████ | Group B | $500.00 |
|  |  | **Total:   $18,233.00** |

The decedents' families requested that the funds be distributed to them.  The claim of $3,450.00 for the deceased ███████████ was distributed to the heir, ███████

JOINT STATUS REPORT

1    ████████████, on February 2, 2013 per the Court's instructions. The claim of

2    $9,522.00 for the deceased ██████████ was distributed to the heir, ████

3    ████████████, on November 2, 2012 also according to the Court's

4    instructions. The purported heirs of ███████████ and ███████████ that

5    requested the distribution of the claim payments failed to provide proper and

6    sufficient proof that they were the true heirs to the claimants' estates. Therefore,

7    these funds were not dispersed to them.

8        **5.**    Stop payments issued for outstanding checks**:** Stop payments have

9    been issued by First Republic Bank on all checks that remained uncleared or

10   outstanding after 6 months of being mailed to the claimants. As of the beginning

11   of October, 2013, the following 7 stop payments have been issued:

| Claimant | Date Check Sent to Claimant | Date of Stop Payment | Check Number | Amount of Check |
|---|---|---|---|---|
| ██████████ | 10/26/2012 | 06/12/2013 | 10066 | $9,522.00 |
| ██████████ | 10/26/2012 | 06/12/2013 | 10098 | $600.00 |
| ██████████ | 10/26/2012 | 06/12/2013 | 10138 | $600.00 |
| ██████████ | 10/26/2012 | 06/12/2013 | 10174 | $2,070.00 |
| ██████████ | 10/26/2012 | 06/12/2013 | 10175 | $2,070.00 |
| ██████████ | 01/04/2013 | 06/12/2013 | 10207 | $10,850.00 |
| ██████████ | 01/04/2013 | 06/12/2013 | 10210 | $1,190.25 |
|  |  |  |  | **Total: $26,902.25** |

## C.    HCVT'S Fees and Costs Through the Current Period

For period from February 28, 2013 through December 5, 2013, HCVT has provided

professional services in connection with the following: AXA claimants payment processing,

contacting claimants, settlement research, preparing progress reports including settlement analysis

and final settlement reporting requested by counsel. For this work, HCVT requests the approval

1  of fees in the sum of $10,897.24 which will be requested by a separate submission and proposed

2  order.

3

4  ## IV.

5  ## REMAINING MATTERS

6

7  **A.  Notice of Motion for Attorneys' Fees**

8      Counsel will seek reasonable attorneys' fees for efforts in identifying,

9  increasing, and preserving the AXA Settlement Fund. Counsel identified and

10 recovered over $753,956 in fraudulent transactions. Counsel also identified over

11 $2.5 Million in undisclosed transfers made by Administrator Kartalian to an

12 undisclosed account. Additionally, Counsel ensured the proper accounting of claim

13 evaluations, the proper recording of denials and approvals, and the proper

14 calculation of claim values. These efforts corrected discrepancies in claims

15 distribution and ensured that claimants received fair and accurate payments under

16 the AXA Settlement Fund. Counsel submit that the fees to be sought are reasonable

17 in light of efforts expended and results achieved.

18

19 **B.  Issues Requiring Judicial Resolution**

20      The following claimants await resolution of their claims:

21

22      1. ███████████████

23      On December 3, 2007 ███████████████, along with four other family

24 members   (███████████████████████████

25 ███████████████████), submitted claims under policyholder ███████████.

26 Five years later, only ███████████████ received a settlement check. Mr.

27 ███████████ also submitted a claim under his claimed heir ███████████. Mr.

28 ███████████ and his other family members received no notice of approval or denial

1   of their claims, however Mr. ██████████ two claims were listed as Denied in the

2   court's list. Mr. ████████ submits that because one family member received a

3   settlement under the policy, all other family members who submitted a claim

4   should receive a settlement check as well. Each family member submitted identical

5   documentation and evidence in support of his or her claim. Mr. ████████

6   respectfully requests that the Court approve the ████████ family's claims and

7   issue payment. In light of the content of the court's approved/denied list, Counsel

8   have found no reason to approve payment.

9

10          2. ████████

11          Mr. ██████ respectfully requests that the Court approve his supported

12   claims and issue payment.

13          ████████ submitted thirty-seven claims under every policyholder

14   named ██████ and ██████. Mr. ██████ never received a response from the

15   AXA Settlement Fund approving or denying his claims. Under ██████ lineage,

16   the claimant established a connection to two policyholders: 1) his maternal

17   grandfather's grandfather ██████ and 2) ██████'s son ██████. However, the

18   claimant failed to establish a connection with all other ██████ policyholders.

19   Under Arabian lineage, the claimant established a connection to two policyholders:

20   1) his grandfather's father ██████ and 2) ██████'s son ██████. However, the

21   claimant failed to establish a connection with the remaining ██████ policyholders

22   other than ████████. ████████ appears on the Approved list for a claim

23   related to his claimed heir ████████.

24          HCVT has reported that ████████ is not on the Group A or Group B

25   Approved List for any ██████ claim, and that ████████ is not approved

26   on any of the ████████ claims. Therefore, no further payment need be made to

27   him for these claims.

28

3. ████████████

████████████ appears on the Approved list for six claims related to six policies in the name of her claimed heir ████████████ (Policy Nos. ████, ████████████████████). Three checks were originally issued. One was short of the amount owed.

Accordingly, HCVT issued four checks to pay this claimant on three policies and the one deficiency. All of those checks have cleared. No issue remains related to this claimant.

4. ████████████

Based on the under seal approved/denied list, Mr. ████████ was approved for five claims:

Heir: ████████████████ (Policy # ████)

Heir: ████████ (Policy # ████)

Heir: ████████████ (Policy # ████)

Heir: ████████████ (Policy # ████)

Heir: ████████████ (Policy # ████)

Although five checks were issued in his name, Mr. ████████ received and cashed only two checks: check #1092 in the amount of $4,140 and check #1093 in the amount of $2,070. According to the production register, the second of these checks should have been in the sum of $4,761 (policy # ████), a deficit of $2,691.The three remaining checks (check numbers 1089, 1090, 1091) were improperly routed to the Boyajian Associates account in the amounts $20,700, $4,761, $23,805 respectively.

Accordingly, counsel submit that payment should be made to Mr. ████████ to account for the checks that did not reach him and that he was entitled to be paid in the total sum of $51,957

JOINT STATUS REPORT

5. ████████████

████████████ appears on the Approved list for a claim related to his claimed heir ████████████ for Policy # ██████, and related to his claimed heir ████████████ ████████████ for Policy # ██████. The amounts related to these claims are $7,245.00 and $1,360.25. Neither of the checks which appear on the Not Cleared list, however, reached Mr. ██████, who was reported to have passed away in 2008.

HCVT is in the process of validating the identity of the heirs who would be entitled to the residue of the payments owed to Mr. ██████, and will make payment to him/her/them when confirmation has been obtained..

6. ████████████

████████████ was previously classified as nonresponsive by mail and phone and no email was found on file. She is part of group B with funding due of $26,105. She contacted HCVT which, at the time it was contacted, believed it was no longer entitled to issue checks without a further court order. She was entitled to be paid $26,105 and simply could not be contacted by HCVT, which information has now been obtained in part. A check was issued on 6/4/13 in the full amount that remained owed to the claimant, and the check cleared the bank on 7/22/13.

No issue remains related to this claimant.

7. ████████████

████████████ appears on the Approved list for a claim related to her claimed heir ████████████. HCVT is in the process of validating the identity of the claimant who would be entitled to the payment owed, and will make payment to her when confirmation of her identity and mailing address has been obtained.

8. ████████████

Claimant ████████████ received a check from HCVT for $11,851 but is unable to cash it in Armenia. A stop payment should be issued in the next round of stop payments. HCVT awaits verification from the Geragos firm concerning the accuracy of the wire transfer information obtained for the claimant, and once received, HCVT will initiate a wire in final payment of the claim.

9. ████████████████████████

████████████████ & ████████████████ were approved and received substantial checks upon two claims, each.

████████████████ made four separate claims. One of these claims was denied. One was paid and cleared on March 2, 2010. The two other claims were paid by HCVT on September 12, 2012 in substantial amounts, and they have cleared.

████████████████ made five separate claims. One was denied. Two of the claims were paid on 3/30/2010. The two other claims were paid by HCVT on September 12, 2012 in substantial amounts, and they have cleared.

While they previously contacted counsel to determine whether they are entitled to funds for their claims, HCVT has confirmed that there are no other approved claims which have not yet been paid.

## C.   Possible Claims against Banks

The First California Bank and Pacific Western Bank may be liable for depositing and cashing checks made payable to claimants without evidence that the payees authorized the transactions. Funds remain unaccounted for under the AXA Settlement Fund. To the extent that funds cannot be recovered, Counsel may file claims against the banks or individuals. Depositions of certain bank officials were taken, and these depositions did not reveal breaches of bank procedures, although questions remain concerning the adequacy of those procedures to prevent fraud.

60718774.1
- 16 -

1    However, these depositions did not determine whether bank officials violated their

2    fiduciary duties or whether the banks' procedures were abused to facilitate fraud or

3    other misconduct. As some of the relevant parties have asserted their 5th

4    Amendment rights, the Court may determine whether Counsel should continue

5    efforts to extract funds or if these efforts are better left for criminal prosecution.

6

7    **D.      Referral to California State Bar**

8         **Investigation of Misconduct:** Berj Boyajian is currently licensed as a

9    member of the California State Bar (Bar No. 60631). In light of the acts committed

10   by him in relation to the administration of the AXA settlement fund, an ethics

11   complaint was submitted to the State Bar by a person who is not a named party or

12   counsel in this suit. Counsel is informed that, as in his deposition in this action,

13   Boyajian asserted the Fifth Amendment in response to the State Bar's inquiries.

14        It appears that the California State Bar erroneously and baselessly construed

15   the resolution of the Geragos action as this Court's determination that Boyajian had

16   not engaged in any misconduct, and on that basis closed the investigation.  The

17   State Bar has advised that either the file would be reopened or a new investigation

18   would be begun upon a referral from this Court for that purpose. In light of the

19   conduct shown by the prior pleadings in this case, counsel submit that a referral to

20   the State Bar is proper.

21

22

23

24

25

26

27

28

JOINT STATUS REPORT

## V.

### CONCLUSION

In order to ensure integrity in the orders of this Court, a substantial amount of work has been done to verify the accuracy of the AXA claims process.  Significant progress has been made such that good confidence in the accuracy of payments due can be expressed at this time.

Respectfully submitted,

DATED: December 5, 2013          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                                 By:  /s/ Roman M. Silberfeld
                                      Roman M. Silberfeld
                                      *Attorneys for VARTKES YEGHIAYAN*


DATED: December 5, 2013          THE YEGHIAYAN LAW FIRM

                                 By:  /s/ Vartkes B. Yeghiayan
                                      Vartkes B. Yeghiayan

DATED: December 5, 2013          GERAGOS & GERAGOS, APC

                                 By:  /s/ Mark J. Geragos
                                      Mark J. Geragos

DATED: December 5, 2013          KABATECK BROWN KELLNER LLP

                                 By:  /s/ Brian S. Kabateck
                                      Brian S. Kabateck

                                 *Attorneys for Plaintiffs and the Settlement Class*